No. 35,472

In the Matter of the Estate of H. M. Meech, Deceased (PEARL D. MEECH, *Appellant*, v. ROWE GRIGSBY, *Appellee*).

(130 P. 2d 571)

Opinion filed November 7, 1942.

*Walter B. Patterson*, of Fort Scott, argued the cause for the appellant.
*Harry C. Blaker*, of Pleasanton, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a petition for an order permitting an administrator to sell real estate for the payment of debts. Judgment was for an intervening petitioner. The widow, who claims a homestead right in the real estate, has appealed.

The case was here once before. (See *Meech v. Grigsby*, 153 Kan. 784, 113 P. 2d 1091.) The purchaser of the property under a written contract with the administrator, pursuant to an order of sale by the probate court, claims that he is entitled to the property or if he is not entitled to it he is entitled to a lien on it to the extent of some improvements he placed on it after he purchased it. The property involved consisted of fourteen lots in the city of Prescott. Some of these lots were on one side of an alley and some on the other. The house stood on one side of the alley and the barn and well were on the other. The widow first caused an application to be filed by the administrator to sell this real estate to pay debts the estate owed. Some proceedings were taken to bring this about. When it was discovered that there had been a mistake in the notice published so that the land was not properly described a second application was made. Sometime thereafter the application was set for hearing on the question of whether or not the land would be sold to pay the debts. A few days before this second sale occurred the widow for the first time complained to the probate judge that she had a homestead right in this property and when the case came on to be heard she raised that point and objected to an order of sale on the ground that the property was her homestead and not subject to sale for payment of debts. The probate court ruled adversely to her claim and she appealed to the district court. The district court held that she was entitled to a homestead right and found that it included one acre of the real estate on which the dwelling house and improvements were situated.

The trouble about that was that the house was on one side of the alley and the well and barn on the other side.

On appeal this court held that since the lots on which the house stood and those on which the barn and well were located were not contiguous, the homestead could not consist of some lots on one side of the alley and some on the other, and as a matter of fact the particular lots upon which she had a homestead right had not been determined. This court directed that the case be sent back for a

new trial in order to permit the widow to make a selection of the homestead property and that one acre she chose to take might be definitely described. Before the widow had made claim that the land was her homestead the administrator had filed a petition praying for an order to be permitted to sell the real estate for the payment of taxes. This application was set for trial on the 15th day of February, 1940; the widow was advised of the date of this hearing and had notice of it but did not appear. Upon this hearing an order of sale was directed to issue and did issue and the administrator entered into a contract with the appellee here for the purchase of the real estate. Just preceding the execution of this contract the administrator and the widow discussed the sale of the property with appellee and had some discussion about the price. The widow said she was not satisfied with the price of $650 offered by appellee, and it was suggested that she discuss this with appellee. Later the administrator advised her that he had entered into a contract to sell the real estate to appellee and requested her to bring the papers necessary to complete the transaction and she did deliver the abstract and some old deeds and the key to the property to him. Upon the execution of the contract on February 16, 1940, the appellee entered into immediate possession of the property and paid $100 on the purchase price. It was in bad condition and in need of some repairs in order to make it habitable. Appellee immediately began to expend money for repairs and material necessary to make these repairs, all of which was known to the widow. Sometime after that the widow called at the property and knew that the repairs had been made and that more improvements were being made.

When the case was here before it was sent back so that the trial court might make a finding as to the particular land which the widow said was her homestead. This court also ordered that a determination be had of two other questions, that is, whether the widow by her acts and conduct with reference to the sale of the property had waived her homestead rights thereunder; and second, if she was not estopped from claiming homestead rights, then what were Grigsby's rights, if any, under the occupying claimants' act.

The case has now been tried on these issues. The court made extensive findings of fact, about as they have been detailed here, and found further that the widow was familiar in a general way with the efforts made by herself and administrator to sell the property following the death of her husband up to and including the last

hearing on June 1, 1940, on the petition for authority to sell real estate; that she personally made efforts to sell it to appellee and others; that she knew the date of the first hearing on the petition for authority to sell real estate and voluntarily absented herself from it; that she at all times represented to appellee and others the property was for sale up to and until the date of the last hearing, or a day or two preceding it; that from and after February 16, 1940, she knew that a contract of sale had been entered into between the administrator and appellee for the purchase and that appellee had paid the sum of $100 in cash, the balance to be paid upon the approval of title and delivery of deed; that she knew that appellee was expending substantial sums of money in the repair and rehabilitation of the property and that at no time prior to June 1, 1940, the date of the second hearing on the petition, or a day or two prior thereto, did she advise any person who had any connection therewith that she had or claimed to have a homestead right in it; that appellee relied upon the statements of the widow, entered into the contract, made the down payment of $100 thereon and expended substantial sums of money on the repair thereof, and if deprived of it would suffer a substantial financial injury; that the conduct of the widow in representing to appellee, to other prospective purchasers, to the probate judge and to the administrator that the property should be sold by the administrator for the purpose of realizing funds with which to pay the debts of the estate and her failure to assert a homestead right or to select same, was inconsistent with the claim which she afterwards asserted on the second hearing on the petition that she had or claimed to have a homestead right in the property and if such claim of homestead right be not allowed it would result in substantial financial injury to the intervenor, appellee here.

The court concluded as a matter of law that the conduct of the widow in representing the property to be for sale and her efforts to sell the property and her failure to assert a homestead right thereby caused appellee to act upon her representation that the property was for sale and to expend substantial sums of money in repairs and improvements on the property and the payment of $100 was so inconsistent with her later claim of homestead right that she had become estopped to assert her homestead rights thereon to the injury of appellee and the cause should be remanded to the probate court with directions to proceed with the sale of the real estate to

appellee and on the payment of the balance of the purchase price an administrator's deed be delivered to him.

After a motion for a new trial was overruled a motion to set aside certain findings of fact and conclusions of law as made by the court was overruled and the judgment issued accordingly.

The burden of the argument of the appellant is that the evidence did not warrant the conclusion that the widow was estopped for the reason that the evidence did not show that she knew she had a homestead right before she permitted the contract to be made with appellee, and permitted him to enter on the real estate and to expend his money. There is very little question about the ultimate facts in this case. There can be no doubt that the widow caused proceedings to be instituted to sell the real estate for the payment of debts, and that she bargained with appellee about the sale price and knew that the $100 had been paid and extensive improvements on the property had been made. There can be no doubt that appellee acted in good faith.

The rule is laid down in *Hazel v. Lyden*, 51 Kan. 233, 32 Pac. 898, as follows:

"Where plaintiff's real property was sold under an execution from a court having no jurisdiction to issue the same, and by an officer having no authority to sell, but the purchaser at the sale acted in good faith, and paid the officer at the time of the sale all that it was reasonably worth, and the owner thereof, who was present at the sale, made no protest, but gave the purchaser quietly and without objection possession of the land, and received the proceeds thereof, and permitted the purchaser and his grantees for nearly twelve years to occupy the land and make valuable improvements thereon, without objection, although living within two miles of the land, *held*, that such owner, under the circumstances, is estopped from denying the title of the purchaser at the sale and from recovering the land, although at the time of the sale such owner did not know that the sale and the proceedings were void." (Syl.)

The question of estoppel in a case of this kind depends a great deal on good conscience and common justice. It would not do for this court to say that a person who acted in good faith in spending his money to pay part of the purchase price and make the extensive improvements appellee made should lose all this just because the widow did not discover that she had a homestead right until after she had permitted all these things to be done. Such would be the result if we adopted the contention of the appellant.

The rule is stated at 50 A. L. R. 198, as follows:

"The doctrine that a widow may be estopped from claiming dower by failing to assert her right when the land of her deceased husband is offered for sale

has been affirmed or taken for granted in numerous cases. In a portion of these cases the doctrine was applied with relation to evidence which showed that the widow who had remained silent in regard to her rights knew that, under the explicitly declared terms of the sale, the property was to be conveyed free from all encumbrances. But there is no reason to suppose that the courts considered the presence of this element to be a condition precedent to the predication of an estoppel. It is manifest that in all the cases in which the claim of a widow for dower has been pronounced untenable on the ground of an estoppel it must have been assumed for the purpose of the decisions that she was chargeable with knowledge of her legal rights in respect of her husband's property."

See, also, *Adams v. Gilbert,* 67 Kan. 273, 72 Pac. 769.

The judgment of the trial court is affirmed.